392 So.2d 451 (1980)
STATE of Louisiana
v.
Alvin REDIC.
No. 80-KA-1361.
Supreme Court of Louisiana.
December 15, 1980.
Rehearing Denied January 26, 1981.
Howard Fish, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Ronald R. Inderbitzin, Asst. Dist. Atty., for plaintiff-appellee.
LEMMON, Justice.
The principal issue in this appeal is the admissibility of an inculpatory statement made by defendant to police officers.
On March 12, 1979 an elderly woman was abducted at knife point from the parking lot at a Shreveport hospital. Her assailant *452 forced his way into her car and ordered her to drive to a wooded area, where he raped and robbed her and forced her to submit to an act of oral sex.
The assailant instructed his victim to have a good look at him so that she could report him to police and have him taken off the streets. With this strange parting comment, he released her. She fled and reported the incident.
Shortly thereafter police arrested a suspect, who confessed to the offense. The news of the suspect's arrest in connection with rape was reported in the Shreveport newspapers.
Not long thereafter, during the evening of March 18, 1979, defendant walked into the Shreveport Police Station and advised the officer on duty at the desk that he was responsible for the March 12 rape-robbery. He stated that he had learned from a newspaper report that another person was being held for the crime and that he did not want an innocent man to go to prison for his crime. When told by officers that the suspect in custody had confessed, defendant responded by revealing several facts about the offense. The officers verified those details from the case file and telephoned the detective who was directing the investigation. The detective requested that they ask defendant if he knew what type of automobile the victim was driving. The officers did so. When told that defendant correctly described the automobile, the detective told the officers that he was on his way to the station.
The officers then advised defendant of his Miranda rights and did not question him further. Defendant was permitted to wait in a chair in the police office (where he reportedly fell asleep) until the investigating detective arrived.
Upon arrival the detective again advised defendant of his Miranda rights. Defendant thereafter gave a complete, detailed confession.
Defendant was subsequently convicted of aggravated rape, armed robbery, and aggravated crime against nature. He was sentenced concurrently to life imprisonment at hard labor without parole (aggravated rape), forty years imprisonment at hard labor without parole (armed robbery), and ten years imprisonment at hard labor (aggravated crime against nature).
Defendant urges reversal of his conviction because the prosecution introduced evidence of his statement describing the victim's automobile which he had given to the officers at the desk in response to the question requested by the investigating officer. He does not contest the admissibility of the initial statements admitting culpability when he first came to the police station or the admissibility of the detailed confession given after he received Miranda warnings.
Defendant's contention could be disposed of simply by holding that any error in admitting the statement is harmless beyond a reasonable doubt, inasmuch as the more self-condemning statements given prior to and after the questioned incriminatory response concerning the vehicle description were conceded to have been properly admitted. See State v. Jones, 386 So.2d 1363 (La.1980); State v. Gibson, 391 So.2d 421 (La.1980); Null v. Wainwright, 508 F.2d 340 (5th Cir. 1975). However, such an approach would be inappropriate here, because the trial court did not err in admitting the statement. Although "harmless" in light of the circumstances, admission of the statement was not "error".
Even voluntary statements made in response to "custodial interrogation" are inadmissible to prove the guilt of the declarant, unless preceded by the warnings required by Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), and by La.Const. art. 1, § 13 (1974). In this case there is no doubt that the officers reasonably should have known that the procedure employed (the "asking") was likely to produce an incriminating response (if the defendant was in fact the culprit). Compare State v. Castillo, 389 So.2d 1307 (La.1980); State v. Jones, above; Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Thus, the critical inquiry is whether the defendant was in *453 custody at the time the question was posed concerning the vehicle's description. See Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976).
Immediately prior to that question defendant clearly was not yet in custody since he had voluntarily come to the station to reveal and expiate his guilt. Yet, immediately after his accurate response giving the correct description of the vehicle, he was probably in custody as the desk officers recognized by immediately giving warnings when the investigating detective informed them he was on his way to the station. The question distilled from this analysis is whether an ineffable "shift" from a noncustodial to a custodial relationship occurred prior to the challenged question and response.
In State v. Menne, 380 So.2d 14 (La.1980), this court observed:
"In explication of the basic rights to the assistance of counsel and the freedom from self-incrimination, the Supreme Court in Miranda v. Arizona held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By `custodial interrogation,' the Miranda court meant `questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' Thus, it is clear that the constitutional warnings are required in `situations falling short of a formal placing in arrest ... in which the accused may be said to be under custody or significant restraint.'
"No less is required by Article I, § 13 of the 1974 Louisiana Constitution. By providing that a person `arrested or detained in connection with the investigation' of an offense must be fully advised of his rights, the framers intended to require that investigating officers give the warnings anytime such a citizen was deprived of his liberty in a significant way or was not free to go as he pleased.
"Whether a person has been taken into custody, detained or deprived of his freedom of action in a significant way must be decided by an objective test. Any formulation making the need for Miranda warnings depend upon how each individual being questioned perceived his situation would require a prescience neither the police nor any one else possesses. On the other hand, a standard hinging on the inner intentions of the police would fail to recognize Miranda's concern with the coercive effect of the `atmosphere' from the point of view of the person being questioned.'" (Citations omitted.)
Past decisions of this court have considered several factors in determining whether there was a custodial interrogation. Pertinent areas of inquiry are whether there was probable cause to arrest, whether the investigation had focused on the suspect, whether under the circumstances a reasonable person would have believed he was in custody, whether the statements and actions of the suspect indicated he reasonably believed he was in custody, and whether the statements and actions of the officers indicated an intent to restrain the suspect. No single factor is alone determinative, and each case must be evaluated objectively. See Brown v. Beto, 468 F.2d 1284 (5th Cir. 1972); State v. Roach, 322 So.2d 222 (La.1975).
Although in the present case there was probable cause to arrest because of the initial admission, absence of any other pertinent factor mitigates against a finding that the relationship was "custodial" prior to the challenged statement. Before that critical point the focus of the investigation still remained on the self-confessed suspect already in custody. The defendant had voluntarily appeared at the police station and had perceived no conduct on the part of the police which would reasonably lead him to believe that he was yet under restraint. The officers' actions clearly indicate they were still trying to decide whether to restrain defendant when they asked the challenged question, and indeed they asked the *454 question in order to determine whether to investigate him at all.
Thus, the shift from a noncustodial to a custodial relationship did not take place until after the question concerning the car's description was correctly answered. When the situation is evaluated from an objective standard, it is clear that no restraints were imposed on defendant prior to that question's being answered. The officers were not ready to accept defendant's proffered surrender to their custody until they learned that he knew enough about the crime to cast suspicion on the earlier suspect's confession.
Thus, although defendant's response was prompted by a police question, he was not yet in custody, and his obviously voluntary statement need not be excluded because it was not preceded by Miranda warnings.
Defendant's remaining assignments require only the application of well-settled principles of law and are treated in an unpublished appendix.
The conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., concurs, disagreeing only with the remarks pertaining to harmless error.