395 So.2d 766 (1981)
STATE of Louisiana
v.
Diane SUMLER.
No. 63810.
Supreme Court of Louisiana.
March 2, 1981.
Rehearing Denied April 6, 1981.
*767 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Steven A. Hansen, Asst. Dist. Atty., for plaintiff-appellee.
Thomas W. Davenport, Jr., Monroe, for defendant-appellant.
DIXON, Chief Justice.
In December, 1977 defendant appeared in a hospital emergency room with her eighteen month old son. Forty per cent of his body had been burnedfrom his waist down to his toes; thirty per cent of his body was covered with third degree burns burns completely through the skin, down, at least, to the subcutaneous fat layer. His skin was blistered, cracked open and peeling. The third degree burns required grafting procedures. The child had received the burns in a bathtub.
Defendant was tried before a district judge, and was convicted of cruelty to a juvenile. R.S. 14:93. Four assignments of error are raised in this appeal. None have merit.[1]

Assignments of Error Nos. 2 and 3
While at the hospital, defendant made certain inculpatory remarks to the physician who examined her child and to a police officer who was investigating the case. She was not advised of her rights prior to making these statements, and claims that the statements should have been held inadmissible.
The physician had asked defendant to explain how the child had been burned. This inquiry was obviously part of the doctor's effort to diagnose the child's condition accurately. The burns were critical, and the manner in which they were caused was apparently of medical significance. Defendant told the doctor that she had put the child in a bathtub to give him a bath, and that she had left the room for a few minutes to check on another child. When she returned, she said, the child was burned.
Defendant gave substantially the same story to the police officer. In addition, though, she told him that she had been "mad" at her child when she bathed him, that she turned on more hot water than cold, and that she pushed the baby back into the tub when he tried to get out. She said that she had been out of the bathroom for about three minutes when she heard the child crying, and that she saw steam rising from the tub when she returned.
These inculpatory remarks are not confessions, but admissions. R.S. 15:449. Defendant did not admit guilt, but merely acknowledged facts that tended to establish her guilt; at the same time, she attempted to explain her behavior in a manner that made the burning seem accidental. Such admissions are exempt from the hearsay rule. R.S. 15:434, 449 et seq. Compare F.R.E. 801(d)(2). It is clear that defendant made the statements voluntarily.
Defendant, however, takes the position that her statements were unconstitutionally solicited, and that they should not have been admitted into evidence. Reliance is placed upon the decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Art. 1, § 13 of the Louisiana Constitution.
Article 1, § 13 states in part:
"When any person has been arrested or detained in connection with the investigation or commission of any offense, he shall be advised fully of the reason for his arrest or detention, his right to remain silent, his right against self incrimination, his right to the assistance of counsel and, if indigent, his right to court appointed counsel...."
This article essentially incorporates the procedural safeguards established in Miranda v. Arizona, supra, although the term "detained" might have a slightly different meaning than the term "custody" used in *768 the Miranda case. Hargrave, "The Declaration of Rights of the Louisiana Constitution of 1974," 35 La.L.Rev. 1, 40-42 (1974). A suspect is entitled to be informed of the right to silence, the privilege against self incrimination and the right to the assistance of counsel when he is "arrested or detained," that is, when he is subjected to custodial interrogation. The United States Supreme Court explained it this way:
"... By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way...." Miranda v. Arizona, 384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d at 706.
Under both the Miranda decision and Art. 1, § 13, a suspect is considered to be detained or held in custody when he "necessarily and reasonably must have understood that he was under compulsion to remain and submit to questioning." State v. Menne, 380 So.2d 14, 17 (La.1980).
The basic purpose of the warnings is to counteract "the coercive potential of police interrogation." State v. Segers, 355 So.2d 238, 244 (La.1978). For that reason, the warnings are not necessary when a coercive environment is not present: "police officers are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714, 719 (1977). In determining whether a custodial or inherently coercive situation exists, this court has generally examined factors "indicating the degree the police suspect the person interrogated of committing the offense ..." State v. Segers, supra, 355 So.2d at 243-44. These factors include the existence of probable cause to arrest, the focus of the police investigation, and the reasonable beliefs of the person being questioned. See State v. Redic, 392 So.2d 451 (La.1980); State v. Jones, 386 So.2d 1363 (La.1980); State v. Menne, supra.
Defendant argues that the emergency room physician was acting as an agent of the state because he was under a legal duty to report any possible case of child abuse. R.S. 14:403. It is unnecessary to respond to this argument because the record clearly indicates that defendant was not being detained or deprived of her freedom in any significant way when she responded to the doctor's questions. The only compulsion under which she could have labored would have been a desire to aid the physician in treating her child's severe and disfiguring injuries.
The case is slightly different with regard to the police officer's questioning. The officer had received a radio dispatch reporting a possible case of child abuse. He was required to make a report of his findings, and determined that his best source of information was the child's mother. The officer asked defendant to step outside the emergency room, where he could talk to her privately. She readily responded, and made the statements in question.
The officer's investigation was obviously in a preliminary stage. He had no reason to suspect that defendant had committed a crime, and had not focused his investigation upon any person. Cf. Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Indeed, the officer did not arrest defendant even after the statements were made. Cf. State v. Redic, supra. It is evident that the officer was simply gathering general information about the circumstances of the case so that he could complete his report; his efforts were purely investigatory, and should not have placed the defendant under apprehension that she was under any compulsion to remain with the officer and answer his questions. Cf. State v. Menne, supra. Under these circumstances, it was not necessary for the officer to advise defendant of her rights. The trial judge correctly admitted the statements into evidence.

Assignment of Error No. 4
At the close of the prosecution's case in chief, defense counsel made a motion for acquittal. Such a motion can be granted only if the evidence presented by the state "is insufficient to sustain a conviction." *769 C.Cr.P. 778. In reviewing claims of insufficiency of evidence, this court has applied the standard established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979): whether a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that the offense was proven beyond a reasonable doubt.
When the trial judge denied defendant's motion,[2] the following circumstantial evidence was before him: defendant's child was severely burned from the waist to his toes, but no burns were apparent on his hands or his upper torso; the water in the tub was hot enough to cause third degree burns, the most severe type of burn, which causes damage not only to the skin but to the layers of flesh beneath the skin. These circumstances alone foreclose any reasonable doubt that the injuring might have been accidental: the pattern of the burns indicates that the child did not splash about or use his arms to try to push himself out of the tub. It is not reasonable to believe that an eighteen month old child would sit passively in a tub of scalding water without kicking, thrashing, or trying to push himself up out of the water in an attempt to get out. The absence of any burns on his hands, arms or above his waist is consistent only with the child's being held in the hot water by another person.
According to the policeman who took the initial report, defendant admitted that she was angry at her boy when she was bathing him, and that she pushed the baby back into the tub when he tried to climb out. She also stated that she had adjusted the faucet so that the tub was filled with more hot water than cold; that she left the bathroom and that she heard her son crying, but that she left him alone for several minutes.
The offense of cruelty to a juvenile is defined as "the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child." R.S. 14:93. The term "intentional," as used in the statute, refers to general criminal intent, "present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." R.S. 14:10(2). Defendant admitted that she deliberately pushed her child back into a tub of hot water when he tried to climb out. If she did not know that the water was hot enough to scald her child, it would have taken no effort to find out. Criminal negligence exists when "there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." R.S. 14:12.
Under either theory of criminal responsibility, intentional or accidental mistreatment, the state presented sufficient evidence of guilt beyond a reasonable doubt in its case in chief. Defendant drew the bath and adjusted the temperature; the water was scalding hot; the baby was obviously restrained from leaving the tub, a fact corroborated by his mother's admission; and the child was left in the tub for some minutes. The state's evidence tended to show, beyond a reasonable doubt, that defendant either deliberately filled the tub with hot water and then held her son in the tub to punish him, or that she carelessly allowed the water to become scalding and then held him in the tub, a gross deviation *770 below the standard of care expected of her. The absence of burns on any portion of the child's body except that area that was exposed to the water while he was in a sitting position is a singular circumstance which excludes any reasonable doubt as to defendant's innocence. R.S. 15:438. The child was restrained in the tub, when the water was scalding, by defendant. Accordingly, there was sufficient evidence of guilt to deny the motion for acquittal.
Defendant's conviction and sentence are affirmed.
NOTES
[1] Assignment of Error No. 1 complained of an improper foundation for the introduction of Polaroid photographs because the officer who snapped the shutter did not identify them only the officer who took the prints from the camera, held them while they developed, and peeled the backing from the finished pictures. The assignment is wholly without merit.
[2] Under the authority of State v. Smith, 332 So.2d 773 (La.1976) (Dixon, Calogero and Dennis, JJ. dissenting), this court is allowed to review all of the evidence presented at trial in determining whether a motion for acquittal should have been granted. Whatever the merits of this rule, it need not be invoked in the present case, since the evidence presented by the state in its case in chief affords a sufficient basis for denying the motion. Our review is limited to the evidence to which the motion for acquittal was directed. Defendant does not contend that the evidence as a whole is insufficient to support the conviction. See C.Cr.P. 920.