446 So.2d 1292 (1984)
STATE of Louisiana, Appellee,
v.
Rickie Dale WESTFALL, Appellant.
No. 15884-KA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
Rehearing Denied March 28, 1984.
Writ Denied May 25, 1984.
*1295 Timothy R. Fischer, Asst. Indigent Defender, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Sonia D. Peters and Catherine Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before PRICE, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
Defendant appeals unanimous jury verdicts finding him guilty as charged of one count of aggravated kidnapping,[1] two counts of aggravated rape,[2] and one count of aggravated crime against nature[3] as *1296 well as the imposition of consecutive sentences of life imprisonment for the aggravated kidnapping and on each count of aggravated rape and 15 years for the aggravated crime against nature. The issues on appeal involve the validity of seizures of evidence from a motel room and defendant's automobile; harmless error; and excessiveness of sentence. For the reasons set forth hereinafter, defendant's convictions and sentences are affirmed.

FACTS
The virtually uncontradicted facts in connection with the offenses show that on June 3, 1982, the victim, [who for the purposes of this opinion will be referred to as Ms. Jones], after a visit with her mother, left her parents' home around 2:45 p.m. to get gas prior to her mother's driving her to work. Ms. Jones drove to nearby Town & Country Grocery on Barron Road in Caddo Parish, Louisiana where she purchased gas and cigarettes. While she was sitting in her car, with the driver's window about one-fourth down filling out her check stub, the defendant leaned in her window on the pretext of asking directions. According to the victim's testimony, after she gave directions, the defendant raised his hand into view displaying a gun and forced her to move over into the passenger seat. Defendant then got into the driver's seat, pointed the gun at her, made her put her head down between her legs and drove off with the victim in her car.
Shortly prior to the occurrence of these events, both Karen Ryan and Nancy Hammonds, employees of the Town & Country Grocery, noticed a car later identified as defendant's, being driven by a man slowly up and down the road by the store. Karen saw the car park and the driver [whom she identified in court as the defendant] come into the store and purchase a coke. Karen testified that later the victim came into the store to purchase gas, that she did not see Ms. Jones any more that day but that Ms. Jones' sister later came into the store looking for the victim. Nancy took Ms. Jones' check for the gas and cigarettes, did not see the victim again that day after she left the store but later did see the victim's car parked by the store. She went outside and looked at it noticing that the defendant's car, which had been parked by the store, was gone.
Ms. Jones' testimony was that as the defendant drove Ms. Jones' car toward Mansfield Road and as they approached the railroad tracks, she fought defendant, got the gun away from him and tried to shoot him but the weapon would not fire. Defendant stopped on the Keithville Skating Rink parking lot, laughed at her and regained custody of the gun. Ms. Jones' finger was cut and/or scratched during this incident. The defendant then taped the victim's eyes with masking tape, began driving again and forced the victim to perform an act of fellatio during which the defendant stated he would not kill her if she did everything he told her to do and that he had never killed a woman although he had killed two men and only recently had been released from prison.
After defendant stopped the car in a dirt driveway on the Woolworth Road in Caddo Parish, defendant allowed Ms. Jones to smoke a cigarette and forced her to drink whiskey after threatening to choke her to death if she did not drink it. Thereafter, the defendant pulled the victim from the car into the woods where he forced her to disrobe, disregarding her pleas to be released. Defendant then forced the victim to submit to cunnilingus and proceeded to vaginally and anally rape her. After the acts of rape, defendant forced the victim to again perform fellatio. After she gagged he threatened to choke her to death if she *1297 vomited on him causing her to swallow her own vomit.
Meanwhile, Ms. Jones' mother and sister had become alarmed over the victim's failure to return from the store and her sister, Kim, proceeded to the store to look for her. Kim did not see the victim but noticed defendant's car parked at the store. She ultimately wrote down the color, make and license number of the car. By this time, Ms. Jones' father had also returned home and found his wife upset. He then proceeded to the store, wrote down the license number of defendant's car, and procured a doctor bill from the inside of the car with the name "Westfall" on it which was addressed to Route 2, Many, Louisiana. Ms. Jones' mother called the Caddo Parish Sheriff's Office and the information concerning the car and the bill was ultimately given to a deputy sheriff.
After the sexual acts occurred, defendant told Ms. Jones to get dressed and gave her a blue bandana to wipe her cut finger. They got back into her car and left. Defendant stopped at a convenience store and bought two cokes and cigarettes. Ms. Jones stayed in the car. She testified that she was afraid to try and get away while the defendant was making these purchases. The defendant then drove back to Barron Road, offered the victim money from a big roll of bills which she refused, and released her close to a mobile home park, telling her that he would leave her car back at the Town & Country Grocery. Upon her release Ms. Jones ran into the woods and shortly thereafter was able to flag down a ride to her mother's house. When she arrived at her home, her mother was talking with Caddo Parish deputy sheriffs, including Deputy Jackson, who had already been to the Town & Country Grocery and had seen the small car, later identified as having been driven by the defendant and been furnished information secured from and about the defendant's automobile by the victim's father. After Ms. Jones returned, Deputy Jackson went back to the store where he noted the absence of the small car, and the victim's car parked by the store. Jackson then talked to witness Keith Sepulvado, who informed him as he later testified in court, that he saw the victim's brown Cutlass being parked by the store by a medium sized man with red hair whom he saw exit it, throw a whiskey bottle in the ditch and walk toward the store. Sepulvado testified that the man, who was carrying a pair of gloves and a blue bandana in his hand, got in the small car and drove away. Subsequently, Caddo Parish deputies dusted the victim's automobile for fingerprints and found a latent print on the driver's door which matched a known print of defendant's.
The following morning, June 4, 1982, defendant was arrested by DeSoto Parish Sheriff's deputies in room 230 of the Best Western Motel in Mansfield, Louisiana which he was occupying with Martin Rogers. Defendant's arrest was the result of information received by DeSoto Parish from Caddo Parish authorities via a teletype to the effect that one Ricky Westfall was wanted in connection with the aggravated kidnapping and rape of a Caddo Parish woman the day before. The information also furnished a description of Westfall, as well as a description and the license number of the car he was driving. At the time of the arrest, DeSoto deputies gathered defendant's personal items from the motel room, including clothing, car keys and a roll of money, and transported them to the DeSoto Parish Sheriff's Office. Several hours later, Caddo deputies arrived in DeSoto Parish and secured a search warrant for defendant's car, executed it and seized several items from defendant's automobile which had been left locked and guarded by a DeSoto law officer after defendant's arrest.
Defendant was indicted on July 14, 1982. Motions to suppress identification of physical evidence seized from the motel and automobile were denied and after a three day jury trial, defendant was found guilty of all charges by unanimous verdicts. After sentence defendant perfected this appeal originally assigning five errors but ultimately urging only three of those assignments in brief and at oral argument.
*1298 Assignments of error neither briefed nor argued are considered to be abandoned. State v. Perry, 420 So.2d 139 (La.1982); State v. Williams, 418 So.2d 562 (La.1982); State v. Burge, 359 So.2d 616 (La.1978); State v. Gaines, 347 So.2d 1153 (La.1977). Accordingly, the two assignments of error neither briefed nor argued are considered to be abandoned.

ARGUMENT # I, ASSIGNMENT OF ERROR # 2
By this assignment of error defendant contends that the trial court erred in denying his motion to suppress certain items of evidence seized from his motel room without a warrant. Defendant argues that the DeSoto Parish officers entry into the motel room without an arrest warrant was unreasonable and violative of both the Fourth Amendment to the U.S. Constitution and Article I, § 5 of the Louisiana Constitution (1974) thereby resulting in an illegal arrest. Therefore, defendant contends the evidence seized subsequent to the illegal arrest should have been suppressed by the trial court. Defendant further contends that even in the event his arrest is declared to be valid, the items were not lawfully seized because the officers' stated purpose for the seizure was to inventory and preserve defendant's property rather than to protect the officers or seize obvious evidence.
Absent "exigent circumstances", the Fourth Amendment to the U.S. Constitution and Article I, § 5 of the Louisiana Constitution of 1974 prohibit the police from making a warrantless and nonconsensual entry into a suspect's home to make a routine felony arrest even if probable cause to arrest exists. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); State v. Brown, 387 So.2d 567 (La. 1980); State v. Johnson, 407 So.2d 673 (La.1981). Any evidence the product of an illegal arrest is inadmissible at trial. State v. Malone, 403 So.2d 1234 (La.1981). Although not absolute, the constitutional expectation of privacy from nonconsensual entry and unreasonable searches and seizures extends to a guest in a motel room. See, Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964); State v. Abram, 353 So.2d 1019 (La.1978).
While probable cause to arrest defendant is not at issue, it is undisputed that when defendant was arrested in room 230 of the Best Western Motel that the DeSoto Parish officers had no arrest warrant. Defendant obviously contends that his was a routine felony arrest devoid of "exigent circumstances". For the reasons hereinafter expressed, we cannot agree that defendant's arrest was illegal.
The deputies who arrested the defendant were informed by teletype from Caddo Parish authorities that defendant was wanted for aggravated kidnapping and aggravated rape. They had reason to believe from the information furnished to them that defendant was armed and dangerous. Further, they had not been advised by Caddo Parish as to the status of the victim of the reported crimes. For all these officers knew, the victim might still have been a captive in serious danger. Further, the officers had knowledge that defendant had paid for only the previous night's lodging and thus may have been on the verge of leaving the motel. Additionally, the defendant's room was so situated and constructed with windows that he could have easily viewed the parking lot and the marked vehicles of the deputies as well as the car of the Mansfield City Policeman who initially discovered his vehicle. Had defendant decided to flee from the motel under these circumstances, the lives of the law enforcement officers and/or private individuals could have been endangered.
The arrest warrant requirement must yield to the overriding interest in protecting or rescuing individuals reasonably thought to be in eminent danger of death or serious bodily harm. State v. Loyd, 425 So.2d 710 (La.1983). In the instant case the officers had every reason to believe the victim might have been in the motel room and in eminent danger of death or serious bodily harm.
*1299 Furthermore, a person alerted that his illegal activity has been discovered is aware that arrest may be eminent and is particularly likely to avoid that arrest by destroying evidence or leaving the area. State v. Malone, 403 So.2d 1234 (La.1981). This situation likewise existed in the instant case.
In our view, the facts present here provide sufficient exigent circumstances to allow a warrantless arrest in defendant's motel room. Therefore, the arrest was valid.
However, defendant strenuously contends that even if his arrest was valid that the items seized from the motel room were not seized lawfully. We again disagree.
The deputies who testified at the motion to suppress stated that after Westfall was arrested they informed him he was going to be taken to the DeSoto Parish Courthouse to be turned over to Caddo Parish authorities so he should take all his personal belongings with him. Since defendant had paid for only the previous night's lodging, it was apparent that he would not be returning to the motel room. The other individual who was sharing the motel room also consented to go to the sheriff's office for questioning. The deputies stated that they gathered all defendant's personal belongings and clothing within the immediate area of the motel room that Westfall indicated was his, took them to the sheriff's office, tagged them for identification and thereafter turned them over to Caddo Parish authorities. They further testified that all the items gathered were within Westfall's reach.
In State v. Rhodes, 337 So.2d 207 (La. 1976), an analogous situation occurred. There defendant was arrested in a motel room. At the time of the arrest, the officers removed from the room a locker containing defendant's personal belongings and logged it in the New Orleans' Police Department property book, rather than the evidence book, because they had no reason to believe the contents would have any evidentiary value. The following morning, after having been alerted that defendant was possibly involved in a Baton Rouge armed robbery, the officers again returned to the motel and searched it without a warrant. Defendant moved to suppress all items seized, and his motion was denied by the trial court. The Supreme Court affirmed stating:
2. The trial court's overruling of the motion to suppress was not erroneous. It was not unreasonable for the officers who were arresting this defendant ... to gather defendant's things from a locker in the motel room and log them in the property book incident to that arrest. Nor was it unreasonable on the succeeding day to search the motel room, the occupancy of which had been terminated by the prior day's arrest and incarceration of defendant on a fugitive warrant.
Based upon the rationale of Rhodes, we likewise conclude that it was not unreasonable for the DeSoto Parish officers, who knew that defendant was to be taken to the DeSoto Parish sheriff's office and thereafter released to Caddo Parish authorities, to gather defendant's personal belongings identified by him, transport them to the DeSoto Parish Courthouse and later turn them over to Caddo Parish authorities along with defendant.
We further conclude that the items seized from the motel room within the area of defendant's reach or within the area of his immediate control were validly seized as a search and seizure incident to a lawful arrest. This conclusion as an additional reason for affirming trial court's action in denying the motion to suppress is supported by the well stated rationale of State v. Williams, 398 So.2d 1112 (La.1981):
When a custodial arrest is made, there is always some danger that the person arrested may seek to use a weapon, or that evidence may be concealed or destroyed. To safeguard himself and others, and to prevent the loss of evidence, it is reasonable for the arresting officer to conduct a prompt, warrantless "search of the arrestee's person, and the area `within his immediate control'construing that phrase to mean the area from *1300 within which he might gain possession of a weapon or destructible evidence." United States v. Chadwick, 433 U.S. 1, 14, 97 S.Ct. 2476, 2485, 53 L.Ed.2d 538, 550 (1977); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Clift, 339 So.2d 755 (La. 1976).
A search incident to a lawful arrest not only may be conducted without a warrant, but it may also be made whether or not there is probable cause to believe that the person arrested has a weapon or is about to destroy evidence. "The potential dangers lurking in all custodial arrests make warrantless searches of items within the `immediate control' area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved." United States v. Chadwick, supra; United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).
Applying the above stated rules to the present case, it is likewise clear that the items initially seized in the motel room at the time of defendant's arrest were seized pursuant to a lawful arrest. Much of the evidence initially seized consisted of clothing belonging to the defendant which he wore at the time the offenses were committed. Often clothing will be seized because of its potential value in identifying the occupant as the person who committed the crime for which he was lawfully arrested. This is permissible where the clothing matches a description given by the crime victim or when it is probable that the defendant wore the clothing at the time of the crime and it will contain some substance such as blood or mud, which will aid in establishing that fact. LaFave, Search and Seizure, § 6.7 at p. 480. Certainly in the instant case, it was probable that defendant might have worn the items of clothing found in the room at the time of the crimes which the officers knew had been committed the previous day. Knowing that one of the reported offenses was an aggravated rape, it was also probable the clothing might contain some substance which would aid in establishing that fact.
Although not specifically referred to by defendant, we finally note that after executing the search warrant in connection with the search of the car, Caddo Parish law enforcement officers re-entered room 230 and seized some tags torn from new clothing that were lying about the room. By the time this occurred, it was well past 11:11 a.m. (the time the search warrant was signed), the door to room 230 was open and the maid was about to clean up the room. The search and seizure of these items was not unreasonable since defendant's expectation of privacy, as well as his occupancy, had terminated by this time and because of his earlier arrest. See State v. Rhodes, supra.
We conclude that the trial court did not err in denying the motion to suppress the items seized from the motel room.

ARGUMENT # II, ASSIGNMENT OF ERROR # 3
In this assignment of error defendant contends that the trial court erred in denying defendant's motion to suppress certain items of physical evidence seized from his automobile without a valid search warrant.[4] From our review of defendant's brief, it is apparent that he argues that the affidavit in support of the search warrant fails on its face to establish probable cause for the search because it fails to set forth sufficient facts and underlying circumstances and contains mostly conclusionary statements, contains unintentional misrepresentations which must be excised from the warrant, and lacks sufficient information linking the items sought to the crimes or to the subject of the search, i.e., the car. Defendant fails to address the issue of the validity of the search and seizure as a "plain view" exception to the necessity of a search warrant, although this is the basis upon which the trial court upheld the search and seizure of the items from the *1301 vehicle. That the trial judge obviously found the affidavit in support of the search warrant insufficient to establish probable cause is evidenced by a portion of his reasons for ruling on the motion to suppress quoted as follows:
* * * * * *
In this case the officers went and obtained a search warrant and we are unable to conclude that the rights that they would have had to search the vehicle for those things in plain view and then to extend their search once they did obtain items in plain view would be destroyed by virtue of the fact that they obtained a search warrant even if the technical requirements for the issuance of the search warrant were not fully set forth in the application. Transcript, volume 2, page 312. [Emphasis supplied.]
In its brief the State exerts little effort to defend the validity of the affidavit in support of the search warrant and relies on the "plain view" doctrine citing State v. Ford, 407 So.2d 688 (La.1981). A reading of Ford quickly reveals it to be factually inapposite. However, the State further contends that even if the trial court erred in not granting either or both of the motions to suppress that such action is harmless error in light of the overwhelming evidence of defendant's guilt.
In Illinois v. Gates, ___ U.S. ___, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court abandoned the "two-pronged test" established by its previous decisions in Aguilar v. Texas[5] and Spinelli v. United States,[6] in favor of the "totality of the circumstances" analysis in determining whether an affidavit in support of a search warrant based on hearsay established probable cause for the warrant to issue. Our Supreme Court has followed Illinois v. Gates, supra, thus obviously rejecting its prior adherence to the Aguilar Spinelli test. See State v. Lingle, 436 So.2d 456 (La.1983); State v. Brooks,___ So.2d ___ (La.1984).
Under the rejected AguilarSpinelli "two pronged-test" both the informant's "veracity" or "reliability" and his "basis of knowledge" must have been adequately established and set forth in the affidavit. However, under Illinois v. Gates, supra, the "totality of the circumstances" analysis provides:
* * * The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.
No longer do both the informant's reliability and the basis of his knowledge have to be set forth, for as the court in Gates noted, "a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."
Even under the "totality of the circumstances" standard "sufficient information must be presented to the magistrate to allow that official to determine probable cause, and his action cannot be a mere ratification of the bare conclusion of others". Illinois v. Gates, supra.
In State v. Paciera, 290 So.2d 681 (La. 1974) our Supreme Court concluded that:
* * * The affidavit submitted to the magistrate may be based entirely upon hearsay, but, if so, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him. Factors which support the credibility of an unidentified informant include prior accurate reports *1302 or any specific independent corroboration of the accuracy of the instant report. Factors which support the credibility of the information reported include (a) direct personal observation by the informant or (b) if the information came indirectly to the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectly-obtained information. See State v. Linkletter, 286 So.2d 321 (La. Sup.Ct.1973).
While we realize when an affidavit is based on hearsay that under Gates it may well not be necessary to set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find both the informant and the information given by him reliable, it follows with reason that an affidavit based on hearsay must at least come from a credible source or the information from an unknown or untested source must be shown by sufficient facts and underlying circumstances to be probably reliable.
We conclude, as the trial judge obviously did, that the affidavit[7] in the instant case fails to establish probable cause for several reasons even under the more flexible "totality of the circumstances" standard of Gates.
At the hearing on the motion to suppress, it was clearly established that the affidavit in support of the search warrant in the instant case was based entirely on "hearsay". The affiant, Jimmy B. Crabtree, Jr., never identified himself in the affidavit or in the warrant itself as a law enforcement officer who was involved in the investigation of a reported aggravated kidnapping and aggravated rape. The affiant never attributed the majority of the information in the affidavit to any source other than personal knowledge and never identified the sources of his information although he testified that the affidavit was not based on his personal knowledge but rather on his sourcesthe victim (who was never named in the factual basis for the warrant), and a fellow police officer, Deputy Anderson (also not named or referred to), to whom he talked over the telephone the day prior to his executing the affidavit. The affidavit does not set forth any underlying facts and circumstances upon which *1303 the affiant relied to conclude that an aggravated kidnapping and aggravated rape were committed on June 3, 1982. There are no underlying facts and circumstances set forth in this affidavit by which the magistrate could reasonably conclude that the evidence sought to be seized was probably connected with the aggravated rape or aggravated kidnapping and therefore evidence of a crime. [See and compare, State v. Jackson, 380 So.2d 616 (La.1980).] Furthermore, there are no underlying fact's and circumstances to bolster the affiant's conclusion that he has "reason to believe that described vehicle now contains evidence connected to the above described crimes." There also are no underlying facts and circumstances contained in the affidavit to explain the conclusion that the "[d]escribed vehicle was used to travel to the scene of the aggravated kidnapping..." The statement that "[w]itnesses observed a redheaded white male leave the scene with kidnap victim and driver of above described vehicle is Rickie D. Westfall, who has red hair" is certainly a conclusion as to what "witnesses observed" and there are no underlying facts and circumstances to explain how the affiant obtained such information or reached that conclusion because the witnesses are not named. There are also no facts and underlying circumstances to explain the conclusionary statement that "Rickie D. Westfall was occupying room 230 along with Martin Rogers, white male, at the Best Western Motel". The affiant simply does not reveal that his information comes from other sources, who his other sources are, nor any degree of detail whatsoever as to how these sources obtained the indirect information contained in the affidavit.
In short, this affidavit, based entirely on hearsay, sets forth no sufficient underlying circumstances and details to provide a substantial factual basis by which the magistrate might have concluded that the source of information was someone other than affiant, that either the person or persons furnishing the information to affiant were reliable, or that the information given by that person or persons was reliable. The facts established at the hearing on the motion to suppress were that affiant Crabtree was a law enforcement officer, was involved in the investigation of these crimes reported by the victim, and had received factual information from the victim and a fellow officer which could well have established probable cause to search. However, all of these facts which existed outside of the affidavit cannot salvage this affidavit even under the "totality of the circumstances" test since our law is clear that the essential facts for establishing probable cause to issue a search warrant must be contained in the affidavit. La.C.Cr.P. Art. 162; State v. Daniel, 373 So.2d 149 (La.1979); State v. Koncir, 367 So.2d 365 (La.1979).
The only inevitable conclusion is that the affidavit involved here is based on "hearsay" and not affiant's personal knowledge and does not even set forth that essential fact much less the necessary central facts and underlying circumstances to establish the requisite probable cause.
Further, the fact that the affidavit purports to be based on the affiant's personal knowledge rather than hearsay information furnished to affiant is an unintentional misrepresentation or misleading implication. Under State v. Krolowitz, 407 So.2d 1175 (La.1982); State v. Koncir, supra and State v. Rey, 351 So.2d 489 (La. 1977), these misrepresentations and misleading implications must be excised from the affidavit and the remaining information used to determine probable cause. When this procedure is applied to the instant affidavit, we have remaining, at best, the last sentence of the affidavit which falls far short of establishing probable cause.
Having concluded [as the trial judge obviously did] that the search warrant is invalid, we proceed to determine whether the trial judge was correct in upholding the search and seizure of the items from the vehicle under the "plain view" doctrine.
After arresting the defendant and as they were leaving the motel with him in custody, several of the DeSoto Parish deputies *1304 passed by defendant's vehicle and looked to see if anyone was in it. However, no effort was made to search it. Deputy Huddelston stated that he didn't notice any items in the car and had no knowledge of any items wanted as evidence in connection with the offenses. Thus, he obviously noticed nothing lying in "plain view" in the vehicle that excited probable cause to believe it to be incriminating evidence or contraband. Deputy Davidson likewise passed by the vehicle, looked in it, noticed some sunglasses and a blue bandana but likewise had no knowledge of items wanted as evidence nor did he notice anything in "plain view" that gave him probable cause to believe it to be incriminating evidence or contraband. The DeSoto officers left the vehicle locked in the motel parking lot, with an officer to keep an eye on it until Caddo Parish authorities arrived.
After Caddo Parish authorities arrived, Investigator Crabtree obtained the search warrant referred to hereinabove and proceeded to search the car and seize evidence pursuant thereto.
Having concluded the search warrant issued was invalid, the search and seizure of the evidence from the vehicle was made without a warrant as required by the Fourth Amendment of the United States Constitution and Louisiana Constitution, Article I, § 5 (1974). A search conducted without a warrant is per se unreasonable unless it falls within one of the specific exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Nicholas, 397 So.2d 1308 (La.1981). In such a case, the burden is on the State to show that the search is justified by some exception to the warrant requirement. State v. Pomes, 376 So.2d 133 (La.1979).
The "plain view doctrine" is an exception to the warrant requirement. In order to be applicable, there must have been a prior justification for an intrusion into a protected area, in the course of which evidence was discovered inadvertently, or an officer must have inadvertently observed evidence of the crime from a vantage point without intrusion upon a protected area, and it must have been readily apparent or there must have been a reasonable probability without close inspection that the items were evidence or contraband. When an officer observes evidence of a crime in "plain view", he may not seize the evidence without first obtaining a warrant, absent exigent circumstances. See, State v. Nicholas, supra; State v. Parker, 355 So.2d 900 (La.1978); State v. Pomes, supra; State v. Huston, 445 So.2d 67 (La. App. 2d Cir.1984); State v. Pomes, supra.
As Judge Sexton stated in State v. Huston regarding the "inadvertently discovered" requirement, "the officer must not know in advance of the location of the evidence nor have formulated an intent to seize it."
In the instant case, the evidence was not inadvertently discovered because (1) the Caddo Parish deputies knew of the location of the evidence and (2) their very act of securing a search warrant (although invalid) identifying the specific evidence sought to be seized, evidenced their prior intent to seize it. Furthermore, there were no exigent circumstances present at the time of the seizure. The vehicle was parked and locked on the motel parking lot, defendant was in the custody of law enforcement officials, a law enforcement officer was watching or guarding the vehicle, and the deputies obviously had time to obtain a search warrant prior to searching it because they in fact did.
Consequently, we are compelled to conclude that the evidence seized from defendant's vehicle was seized illegally and should have been suppressed by the trial court.
Nevertheless, the State argues that even if the evidence seized from the car and introduced into evidence should have been suppressed, that such error does not warrant a reversal and remand since the error was "harmless" on the basis that the other testimonial and physical evidence introduced against defendant overwhelmingly *1305 established his guilt beyond a reasonable doubt.
Because there was other substantially similar evidence which independently tended to prove that defendant was the perpetrator of the crimes, we must consider whether the admission of the illegally seized sunglasses, package of cigarettes, pair of gloves, bandana and gun was harmless error.
In State v. Gibson, 391 So.2d 421 (La. 1980), our supreme court adopted the "harmless error test" set forth by the United States Supreme Court in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) as the test that adequately complies with both Federal and Louisiana law in assessing whether or not an error may be deemed to be harmless. As adopted in Gibson, the Chapman test asks whether there is a reasonable possibility that the erroneously admitted evidence (or other constitutional error) might have contributed to the conviction and requires that the reviewing court be able to declare a belief that the error was harmless beyond a reasonable doubt.
The burden of proving harmless error lies with the state. State v. Gibson, supra.
In the instant case the defense was primarily aimed at testing the identification of the defendant, and the victim's knowledge of whether the gun was loaded subsequent to the struggle over the gun and prior to the rapes and crimes against nature. The victim's testimony that the defendant had a gun and the manner in which he used it stands uncontradicted and unquestioned.
A careful examination of the record reveals that the evidence summarized belowboth testimonial and physicalwithout the introduction of the evidence seized from the vehicle, proves the identity of the defendant as the perpetrator of the crime beyond any reasonable doubt:
1. The defendant was identified by Karen Ryan as the man driving the small vehicle up and down the road beside the Town & Country Store and the man who came into the store shortly before the victim arrived and purchased a coke. While Nancy Hammonds could not identify the defendant, she did identify the small car that he drove as the one parked on the parking lot of the Town & Country Store and noted when she later went outside and looked that the small car was gone and the victim's car was parked by the store;
2. The victim's sister identified the car defendant was driving as being the car she observed at the store when she went to look for the victim and she wrote down the color, make and license number of the car. This of course was the car that was parked in the motel parking lot when defendant was apprehended.
3. The victim's identification of the defendant as the man who kidnapped her, raped her twice and forced her to perform fellatio on him is for all purposes uncontradicted. The victim identified the clothes defendant was wearing, the boots he was wearing, the cigarette lighter he used, and the empty whiskey bottle he threw away. Prior to identifying them as exhibits, the victim described in detail the blue bandana, the gun defendant used, the kind of cigarettes he purchased, the gloves he had, and the sunshades he placed on the console in her car. Again, this testimony was uncontradicted;
4. Keith Sepulvado also saw a red haired man drive up to the Town & Country Store in the victim's car, park it, throw a whiskey bottle in the ditch (the one pointed out to the deputies and recovered), walk to the small car and leave in it. Sepulvado observed a blue bandana and gloves in the man's hand;
5. The victim's father came to the kidnap scene, got the license number of the car defendant left parked at the store and retrieved a medical bill out of the inside of the car with the name "Westfall" and an address on it;
6. Bobby Roach, an acquaintance of the victim's family, identified the defendant as the man standing at the driver's door of a parked car at the Town & Country *1306 Grocery talking to a person sitting in the driver's seat thereof whom he believed to be the victim and then saw the defendant drive the car off with the victim no longer visible inside the vehicle;
7. The defendant's fingerprint was found on the driver's side of the victim's car; and
8. Finally fibers from the pants identified as those defendant was wearing during the commission of the crimes were found on various articles of the clothing the victim was wearing when she was kidnapped.
Certainly, without resort to the introduction of items of illegally seized evidence, the other evidence overwhelmingly establishes the identity of the defendant as the perpetrator of the crimes beyond any reasonable doubt.
We note that the blue bandana was sent to the crime lab and analyzed. It contained a stain in which amylase, an enzyme found in saliva, blood groups A and O, and seminal acid phosphate were all present. The technician who analyzed this exhibit testified that such findings in that stain were consistent with the testimony of the victim that she was forced to perform fellatio on defendant, later took the bandana, licked it and rubbed the cut on her finger. However, other physical evidence analyzed [i.e., the victim's panties and blue jeans] contained evidence consistent with her testimony that she was forced to perform fellatio on defendant and later had sexual intercourse with him. The lab findings with reference to defendant's T-shirt also were consistent with the victim's testimony that she was forced to perform fellatio on defendant. Furthermore, Dr. Thomas Pope, a dentist, testified that he examined the victim on June 8, 1982, and that the throat injury she complained of was consistent with her being subjected to forced oral sex. Finally, the Caddo Parish coroner, Dr. Braswell, testified that his examination of the victim revealed trauma to her anal area that was consistent with her testimony concerning the anal rape. All of this other evidence shows that the laboratory analysis of the blue bandana was no more than cumulative evidence.
As has already been stated, the victim's testimony that defendant had a gun which she described as an automatic with an emblem on the handle, is undisputed and uncontradicted. The defendant did not testify and offered only the testimony of one investigator who took pictures at the convenience store where defendant stopped after the crime was committed, character evidence which "backfired", and the testimony of his wife that he did not have a beard on June 3, 1982 and that to her knowledge he was in the habit of shaving every day.
When the victim was asked to identify the gun, sunshades, bandana, gloves and package of cigarettes, her reference to each item was very brief and virtually devoid of any particular evidentiary facts or emphasis. Consequently, we conclude that in this case the state has carried its burden by showing that the possibility that the introduction of the above described items might have contributed to the defendant's conviction was very, very minimal and less than reasonable in light of the other overwhelming testimonial and physical evidence of defendant's guilt. It is our belief that their erroneous admission into evidence was, under the circumstances of this case, harmless beyond a reasonable doubt. [Compare, State v. Banks, 439 So.2d 407 (La.1983) where the inadmissible hearsay was the only information to that effect in the entire case and not "cumulative"; State v. Redic, 392 So.2d 451 (La.1981) where the court held possible inadmissible inculpatory statement would constitute "harmless error" because more "self condemning" statements given prior to the questionable statement were properly admitted; State v. White, 399 So.2d 172 (La. 1981) where court held an illegally seized gun, holster and photographs introduced into evidence amounted to "harmless error" when there was no factual issue that defendant's wife was shot with the gun after he grabbed it from her hand, and State v. Beck, 445 So.2d 470 (La.App. 2d Cir.1984), where we held X-rays admitted *1307 into evidence could not have been reversible error because this information was cumulative.]

ARGUMENT # III, ASSIGNMENT OF ERROR # 5
In this assignment of error defendant contends the trial court erred in imposing an excessive sentence in violation of La. Const. Art. 1, § 20 (1974).
This article prohibits the imposition by law of excessive punishment. Accordingly, the imposition of a sentence, although within the statutory limit, may violate a defendant's constitutional rights against excessive punishment that is enforceable on appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979).
A trial judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983).
The sentencing guidelines of LSA-C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, supra; State v. Tully, 430 So.2d 124 (La. App. 2d Cir.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, supra; State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir. 1983). When Article 894.1 has been complied with, a sentence should not be set aside as excessive in the absence of a clear abuse of the trial court's discretion. State v. Trahan, 425 So.2d 1222 (La.1983).
While concurrent rather than consecutive sentences are the usual rule for a defendant without previous criminal record and in the absence of a showing that the public safety requires a longer sentence [State v. Underwood, 353 So.2d 1013 (La. 1978)], the supreme court and this court have never held that if convictions arise out of a single course of illegal conduct, consecutive sentences will necessarily be found to be excessive. State v. Ortego, 382 So.2d 921 (La.1980). Consecutive sentences are justified when the offender poses an unusual risk to the safety of the public. State v. Jett, 419 So.2d 844 (La. 1982); State v. Watson, 372 So.2d 1205 (La.1979).
In the instant case, the record reveals the trial court meticulously considered and complied with Art. 894.1 of the Code of Criminal Procedure. The trial judge noted that defendant's criminal conduct in the instant case was extremely heinous in nature, that it caused and threatened serious physical and mental harm, that there was no provocation in this case on the part of the victim nor any grounds tending to excuse or justify defendant's criminal conduct, and that defendant had a serious history of prior delinquency and criminal activity and was in fact at least a fourth felony offender. Based on all the above factors which the trial judge set forth in detail, he concluded that defendant was the type of offender that posed an unusual risk to the safety of the public in that if ever released from custody, he would probably commit other serious offenses. The court then imposed consecutive sentences in order to be certain that defendant would actually remain incarcerated for the remainder of his natural life.
Considering the circumstances of this case and the background and history of this defendant, the sentences are not disproportionate and are adequately particularized to the seriousness of the crimes and this particular offender. We find no abuse of the trial court's discretion in their imposition.
The convictions and sentences of defendant are affirmed.
NOTES
[1] La.R.S. 14:44 provides:

Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
Whoever commits the crime of aggravated kidnapping shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
[2] La.R.S. 14:42 provides:

Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistance is overcome by force; or
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
(3) Where the victim is prevented from resisting the act because the offender is armed with a dangerous weapon; or
(4) Where the victim is under the age of twelve years. Lack of knowledge of the victim's age shall not be a defense.
Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
[3] R.S. 14:89.1 provides:

Aggravated crime against nature is a crime against nature committed under any one or more of the following circumstances:
(1) Where the victim resists the acts to the utmost, but such resistance is overcome by force;
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution;
(3) Where through idiocy, imbecility or any unsoundness of mind, either temporary or permanent, the victim is incapable of giving consent and the offender knew or should have known of such incapacity;
(4) Where the victim is incapable of resisting or of understanding the nature of the act, by reason of stupor or abnormal condition of mind produced by a narcotic or anesthetic agent, administered by or with the privity of the offender; or when he has such incapacity, by reason of a stupor or abnormal condition of mind from any cause, and the offender knew or should have known of such incapacity; or
(5) Where the victim is under the age of seventeen years and the offender is at least three years older than the victim.
Whoever commits the crime of aggravated crime against nature shall be imprisoned at hard labor for not less than three nor more than fifteen years, such prison sentence to be without benefit of suspension of sentence, probation or parole.
[4] The items seized from the vehicle were one blue bandana, one package of Kool cigarettes, one pair of blue sunglasses, and one pistol (Ruger.22 automatic without a clip).
[5] 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
[6] 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).
[7] The affidavit reads as follows:

Jimmy B. Crabtree Jr., affiant now appears before the undersigned Judge authorized to issue warrants in criminal cases, and makes this affidavit, under oath, in support of the issuance of a search warrant, to search the following described place: a 1978 Datsun automobile, brown in color, bearing 1982 Louisiana License Plate # 309A998, vehicle Identification number HLA10016384, said vehicle now located in parking area at the Best Western Motel, Mansfield, Louisiana, all located in DeSoto Parish
and to seize, secure, tabulate and make return thereof according to law the following property or things which have been used in the commission of, or which constitute evidence of, criminal conduct, to-wit:
masking tape, small pistol, blue bandanna (sic), rubber boats (sic), work clothes, black bic lighter, Drivers License of [name omitted], half pint whiskey bottles
Affiant says that he has probable cause to believe that the above-listed things to be seized are now concealed and located upon the above described premises, based upon the following facts:
The above described vehicle was used in the perpetration of the crimes of Aggravated Kidnapping and Aggravated Rape on 6-3-82 in Caddo Parish, Louisiana and is presently under the control of Rickie D. Westfall, white male, and affiant has reason to believe that described vehicle now contains evidence connected to the above described crimes. Described vehicle was used to travel to the scene of the aggravated kidnapping and later used to flee from this scene. Above described vehicle was seen at the scene of the kidnapping and the license number of the vehicle was obtained by the parent of the kidnap victim. Witnesses observed a red headed white male leave the scene with kidnap victim and driver of above described vehicle is Rickie D. Westfall, who has red hair. Rickie D. Westfall was occupying room 230 along with Martin Rogers, white male, at the Best Western Motel. Martin Rogers stated they met at the Airport Lounge Bar and he observed Rickie D. Westfall drive the above described Datsun automobile from that lounge to the Best Western Motel in Mansfield, La.
 s/ Jimmy B. Crabtree Jr.
 Affiant
[Bracketed material added.]