683 So.2d 331 (1996)
STATE of Louisiana
v.
Renen C. BARRETT.
No. KW 95 2613.
Court of Appeal of Louisiana, First Circuit.
November 8, 1996.
*333 Walter P. Reed, District Attorney, Covington, and Mr. Terry M. Boudreaux, Gretna, for State of Louisiana.
Joseph P. Anderson, Jr., Slidell, for Defendant, Renen C. Barrett.
Before WHIPPLE, PITCHER and FITZSIMMONS, JJ.
WHIPPLE, Judge.
Renen C. Barrett was charged by bill of information with a misdemeanor, possession of marijuana, a violation of LSA-R.S. 40:966(D). In three motions to suppress evidence, he sought suppression of evidence *334 seized from his person, book bag, school locker, and car, and statements made by him. After a hearing, the court denied the motions. Defendant then pled guilty, reserving the right to seek review of the trial court's rulings on the motions to suppress. See State v. Crosby, 338 So.2d 584, 586 (La.1976). The court sentenced him to a suspended term of six months imprisonment and placed him on two years supervised probation. Defendant filed an application for writ of certiorari, seeking review of the trial court's rulings. We granted certiorari and ordered the parties to file briefs and appear for oral argument. In a single assignment of error, defendant asserts the court erred when it denied the motions to suppress.
Defendant is an 18 year old high school student. On May 3, 1995, Sgt. Carol Baroni and three other law enforcement officers searched for drugs at the school defendant attends, using four drug detection dogs. The school's principal apparently was present for most if not all of the searches. Baroni was the only witness who testified at the hearing held on the motions. She is a narcotics canine handler with the St. Tammany Parish Sheriff's Office, and she also works on a drug detection team for the St. Tammany Parish School Board. As part of the drug detection team, she conducts random drug searches at the junior and senior high schools. During these searches, she checks the classrooms, parking lots, school buses, and any other property which belongs to the school board. She explained the school board wants a drug free school area. At the time of the search, she was working in her capacity as a member of the school board's drug detection team. She explained that if drugs are found, her role as a member of the drug detection team changes to that of a law enforcement officer.
Following normal procedure, Baroni had the principal select six classes to be searched. Defendant was not singled out; he just happened to be in one of the classes. When Baroni was asked if there was any basis to believe any of the students had committed or were about to commit an offense, she said the principal designated the classes to be searched and that some of the classes selected were known to have some of the "problem" students.
After two of the classrooms were searched, the students in defendant's class were asked to stand at their desks, empty their pockets, and leave the room. Baroni then brought the dogs into the room to have them sniff the entire classroom (including all of the students' belongings, every student desk, the teacher's desk, and file cabinets). Baroni's dog alerted on defendant's wallet. Baroni gave the wallet to the principal and asked him to search it. The principal found $400 cash in the wallet. When the cash was placed in a location unknown to Baroni and the dog, the dog again alerted on it. Defendant's book bag also was searched in the classroom. Marijuana leaves were drawn on the bag, and a beeper was found inside the bag.
After the search, defendant was called into the room. The principal asked him why he had the money; and defendant responded, "I sell drugs, ha, ha." Defendant was sent to the office, and Baroni continued with her search. When the search was completed, Baroni spoke to defendant in the office and asked him how he got to school. Defendant said he drove a car, and Baroni asked him to show her where the car was located. Defendant pointed out his car in the school parking lot. Baroni took the dog to a location four cars away from defendant's car. The dog alerted on the hatchback of defendant's car. When this happened, defendant said, "[W]ell, you can look in my car, there's nothing in my car...." Once defendant gave this verbal consent, the officers searched the car and found "some marijuana roach" in the ashtray. Detective Keith Rogers performed a field test on the roach.
Rogers then talked to defendant and advised him of his Miranda rights. According to Baroni's testimony, the officers and the principal wanted to know where defendant's locker was located. When asked for the location of his locker, defendant said his locker did not have a lock and he shared it with another student. (He also apparently told the officers the location of his locker.) Inside the locker, Baroni and the principal found a "High Times" magazine.
*335 On cross-examination, Baroni testified she did not secure a warrant to search the vehicle because defendant consented to the search. Had he refused, she would have obtained a warrant. Baroni said she would not have had any basis to search defendant's vehicle had she not searched his personal effects in the classroom. She explained she could not search every car in the parking lot. She also said she was familiar with the school board's policies for searches. When asked if she was familiar with a portion of the handbook which requires reasonable suspicion for the search of a student's person or personal effects, Baroni said she was familiar with the provision and agreed that "[t]hat's not what was done in this case." She explained she considered the searches in this case to be "random." The clear implication from her testimony is that she did not believe she had reasonable suspicion to believe defendant possessed drugs when he was asked to remove the contents of his pockets. On redirect examination, Baroni testified that she and the other officers do not touch the students and instead limit the search to requiring the students to remove all items from their persons and pockets and from any container they might be carrying.
At the hearing, defendant introduced the "Handbook on Attendance, Discipline, and Student Records," a policy manual for the St. Tammany Parish Public Schools. In the manual, acts of student misconduct are classified in five groups. Group 5 is described as being those "illegal student behaviors that most seriously disrupt the orderly educational process." Delivery or distribution of any controlled dangerous substance is included in group 5. Possession of a beeper pager is included in group 3, which is described as including "those student behaviors that seriously disrupt the orderly education process." Elsewhere in the manual, expulsion is listed as the recommended disposition for a student who has possessed controlled dangerous substances.
The manual specifically refers to LSA-R.S. 17:416.3, and includes the basic language of the statute in the search and seizure section. The manual states that:
[a]ny teacher, principal, school security guard, or administrator may search any building, desk, locker, area, or grounds for evidence that the law, a school rule, or School Board policy has been violated. The teacher, principal, school security guard, or administrator may search the person of a student or his personal effects when based on the attendant circumstances at the time of the search there are reasonable grounds to suspect that the search will reveal evidence that the student has violated the law, a school rule, or a School Board policy. Such a search shall be conducted in a manner that is reasonably related to the purpose of the search and not excessively intrusive in light of the age or sex of the students and the nature of the suspected offense.
The manual states that the search of a person will be limited to "directing the student to remove all items from his or her pockets or any container he or she may be carrying."
The manual also describes a drug detection and control program for the parish schools. The stated goal of the program is "remove drugs from the schools and to force distribution from the school campuses and areas near the campuses" and "to make it clearly understood that drugs will not be tolerated in the schools." The manual indicates trained dogs were purchased for the purpose of drug detection in the schools. The drug detection team is described as being a joint effort between the sheriff's office, local police departments, and the school board. One phase of the drug detection program is unannounced periodic drug searches of the "schools," by the drug detection team, and the handbook refers to "random" searches of a "locker, automobile, etc."
The section of the handbook addressing drug detection by school officials sets forth that any teacher, principal, or administrator may search the person of a student when there is "probable cause" to believe the student is in possession of drugs. As noted above, the handbook states in the search and seizure section that "[t]he search of a student's person will be limited to directing the student to remove all items from his or her pockets or any container he or she may be *336 carrying." However, the handbook's drug detection section, while authorizing a search of the student's person when based upon probable cause, does not specifically include a procedure for having students empty their pockets to allow dogs to sniff the contents of the pockets.
According to comments made by the prosecutor after the guilty plea, the money was returned to defendant and the only items seized during the searches were the roach, magazine, and beeper.

DISCUSSION
Defendant argues the initial search (wherein he was required to empty his pockets) was illegal under LSA-R.S. 17:416.3(A) because the search was not supported by reasonable suspicion and was not a random search conducted with a metal detector. He maintains all other evidence seized and statements taken after the initial improper search should be suppressed as the "fruits" of an illegal search. Insofar as the search of the car is concerned, he argues he did not freely and voluntarily consent. He further argues any statements made prior to the advice of rights should be suppressed because he made the statements while being detained but without having been advised of his rights.
Under LSA-R.S. 17:416.3(A), the search of a student's person, desk, locker or other areas (by a teacher, principal, school security guard, or administrator) is authorized as follows:
A. (1) The parish and city school systems of the state are the exclusive owners of all public school buildings and all desks and lockers within the building assigned to any student and any other area of any public school building or grounds set aside specifically for the personal use of the students. Any teacher, principal, school security guard, or administrator in any parish or city school system of the state may search any building, desk, locker, area, or grounds for evidence that the law, a school rule, or parish or city school board policy has been violated.
(2)(a) The teacher, principal, school security guard, or administrator may search the person of a student or his personal effects when, based on the attendant circumstances at the time of the search, there are reasonable grounds to suspect that the search will reveal evidence that the student has violated the law, a school rule, or a school board policy. Such a search shall be conducted in a manner that is reasonably related to the purpose of the search and not excessively intrusive in light of the age or sex of the student and the nature of the suspected offense.
(b) Random searches with a metal detector of students or their personal effects may be conducted at any time, provided they are conducted without deliberate touching of the student.
(Emphasis added). The statute also requires parish school boards to adopt policy manuals concerning search and seizure. LSA-R.S. 17:416.3(C).
Defendant argues that because Baroni admitted she did not have reasonable suspicion to search him, and because the random search was not conducted with a metal detector, the search was not legal because it was not authorized by LSA-R.S. 17:416.3(A)(2). This argument assumes students may be searched only as authorized by this statute. However, the statute's limitations apply only to searches conducted by certain school officials. Although Baroni was working as a member of the school board's drug detection team at the time she conducted the search, she also was a deputy with the sheriff's office and only officers who are deputized could serve on the drug detection team. When she conducted the search, she was acting in her capacity as a law enforcement officer (not a school security guard). See State v. Wilkerson, 367 So.2d 319, 321 (La.1979). Additionally, the purpose of the statute is not necessarily to limit the situations in which school officials may search a student but to provide for a legal defense and indemnification for school officials in the event they are sued after conducting a search authorized by the statute. See LSA-R.S. 17:416.3(B) and (C)(2); see also LSA-R.S. 17:416.4, 17:416.5 and 17:416.6(B). Moreover, even if the searches conducted in this case violated the statute, not all violations of statutory restrictions are deemed constitutional *337 violations; and the exclusionary rule does not apply to all non-constitutional violations of statutes. State v. Gamberella, 633 So.2d 595, 601 (La.App. 1st Cir.1993), writ denied, 94-0200 (La.6/24/94); 640 So.2d 1341. Thus, LSA-R.S. 17:416.3 does not resolve the issues raised in this case; and we must determine if the search violated the United States and Louisiana Constitutions.
The state bears the burden of proving the admissibility of evidence seized during a search without a warrant. LSA-C.Cr.P. art. 703(D). The Fourth Amendment to the United States Constitution provides that the federal government shall not violate "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." The Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers, including public school officials. Vernonia School District 47J v. Acton, ___ U.S. ___, ___, 115 S.Ct. 2386, 2390, 132 L.Ed.2d 564 (1995).
The initial question is whether defendant was "searched" when he was required to empty his pockets. In its brief, the state does not address this issue and appears to assume a search did not occur when defendant was asked to empty his pockets. The action of a drug dog in sniffing an object is not the equivalent of a search. See State v. Senegal, 95-796, p. 6 (La.App. 3rd Cir. 12/6/95); 664 So.2d 832, 835. However, requiring a student to empty his pockets is a search, although the intrusion is less than if the principal or officer had reached into the pockets themselves.
The ultimate measure of the constitutionality of a governmental search is "reasonableness." Whether or not a particular search meets the reasonableness standard is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, reasonableness generally requires the obtaining of a judicial warrant which is supported by probable cause. However, because special needs exist in the public-school context, warrants are not always required for searches conducted at school. Vernonia School District 47J v. Acton, ___ U.S. at ___ _ ___, 115 S.Ct. at 2390-2391. In New Jersey v. T.L.O., 469 U.S. 325, 338-41, 105 S.Ct. 733, 741-42, 83 L.Ed.2d 720 (1985), the United States Supreme Court held that a school official need not obtain a warrant before searching a student and that the standard of probable cause was not required for such a search. Instead, the Court applied the standard of reasonable suspicion: the "search of a student by a teacher or other school official will be `justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." New Jersey v. T.L.O., 469 U.S. at 341-42, 105 S.Ct. at 743. The Court then concluded the school's assistant vice principal acted reasonably when he examined a female student's purse.[1]New Jersey v. T.L.O., 469 U.S. at 346, 105 S.Ct. at 745. The United States Supreme Court noted it was expressing no opinion regarding the appropriate standard for assessing the legality of searches conducted by school officials in conjunction with or at the behest of law enforcement agencies. New Jersey v. T.L.O., 469 U.S. at 341 n. 7, 105 S.Ct. at 743 n. 7. Presumably, such a standard would be at the very least the same standard applied to searches of students by school administrators and possibly the same standard applied to searches of the general public by law enforcement officers.
The Court also said it was not resolving the issue of whether or not under some circumstances school authorities might be justified in conducting searches unsupported by individualized suspicion. New Jersey v. *338 T.L.O., 469 U.S. at 342 n. 8, 105 S.Ct. at 743 n. 8. The Court noted:
Exceptions to the requirement of individualized suspicion are generally appropriate only where the privacy interests implicated by a search are minimal and where "other safeguards" are available "to assure that the individual's reasonable expectation of privacy is not `subject to the discretion of the official in the field.'"
New Jersey v. T.L.O., 469 U.S. at 342 n. 8, 105 S.Ct. at 743 n. 8 (quoting Delaware v. Prouse, 440 U.S. 648, 654-55, 99 S.Ct. 1391, 1396-97, 59 L.Ed.2d 660 (1979)). Recently, in Vernonia School District 47J v. Acton, ___ U.S. at ___, 115 S.Ct. at 2386, the United States Supreme Court upheld a public school drug policy which authorized random urinalysis drug testing of students who participated in school athletic programs despite the absence of individualized suspicion. See also State v. Ziegler, 93-3019 (La.5/23/94); 637 So.2d 109 (search of a government employee's desk and workstation upheld despite the absence of individualized suspicion).
In evaluating the reasonableness of the search conducted in this case (wherein defendant was asked to remove any items from his pockets), we first must consider the nature of the privacy interest upon which the search intrudes. See Vernonia School District 47J v. Acton, ___ U.S. at ___, 115 S.Ct. at 2391. In New Jersey v. T.L.O., 469 U.S. at 337-40, 105 S.Ct. at 740-42, the Court recognized that students have a legitimate expectation of privacy in their person and in a closed purse or bag carried on their person. However, considering the special nature of the relationship between a student and school officials, defendant's expectation of privacy was diminished. See Vernonia School District 47J v. Acton, ___ U.S. at ___ _ ___, 115 S.Ct. at 2391-92.
Next, we must evaluate the character of the intrusion that is at issue. See Vernonia School District 47J v. Acton, ___ U.S. at ___ _ ___, 115 S.Ct. at 2393-94. Defendant and the other students were asked to remove the items from their pockets and leave the room. According to Baroni's testimony, the principal and members of the drug detection team did not touch or examine defendant's wallet until after a trained drug detection dog alerted on it. Thus, the invasion of privacy was not significant. The decision of whether or not to submit the wallet to further examination did not depend upon the discretion of any of the officials but depended upon the actions of the dog.
Finally, we must consider the nature and immediacy of the governmental concern at issue, and the efficacy of this means for meeting it. See Vernonia School District 47J v. Acton, ___ U.S. at ___ _ ___, 115 S.Ct. at 2394-96. The importance of deterring drug use by schoolchildren was recognized in Vernonia School District 47J v. Acton, ___ U.S. at ___, 115 S.Ct. at 2395. The Louisiana legislature has made a specific finding that "the use and abuse of alcohol, drugs, and other substances among the children of school age in this state is a problem of serious concern and destructive societal impact and that the incidence of alcohol, drug, and substance abuse among the young is high." LSA-R.S. 17:402(A). Special penalties have been enacted for felony violations of pertinent sections of the Uniform Controlled Dangerous Substances Law when the offense is committed on or within a certain distance from property used for school purposes. LSA-R.S. 40:981.3(A)(1). The school handbook introduced in this case displays the concern of the St. Tammany Parish School Board and its desire to have schools which are entirely drug free. Random use of drug detection dogs to determine if drugs are present at schools and, thus, to discourage students from bringing drugs to school is an effective means to achieve this goal.
Taking into account the decreased expectation of privacy defendant had as a student, the relative unobtrusiveness of the search, and the severity of the need met by the search, we conclude the type of search conducted in this case (wherein defendant was asked to empty his pockets and leave the room) is reasonable and hence constitutional.
We recognize that article I, section 5, of the Louisiana Constitution does not duplicate the Fourth Amendment and provides a higher standard of individual liberty: "Every person shall be secure in his person, *339 property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy." See State v. Church, 538 So.2d 993, 996 (La.1989). In State v. Mora, 307 So.2d 317 (La.1975), the Louisiana Supreme Court held that school officials are governmental agents, and thus, searches conducted by school officials must be consistent with the Fourth Amendment. The Court further found that a search on school grounds of a student's personal effects by an instructor who suspected the presence or possession of an unlawful substance was not an exception to the warrant requirement. The Court then concluded that suppression of the marijuana seized was mandated by the exclusionary rule. The United States Supreme Court vacated the judgment and remanded to the Louisiana Supreme Court to consider if its judgment was based on federal or state constitutional grounds or both. Louisiana v. Mora, 423 U.S. 809, 96 S.Ct. 20, 46 L.Ed.2d 29 (1975). In response, the Louisiana Supreme Court summarized its decision and said the decision was based on both the federal and state constitutions. State v. Mora, 330 So.2d 900 (La.1976), cert. denied, 429 U.S. 1004, 97 S.Ct. 538, 50 L.Ed.2d 616 (1976).[2] In New Jersey v. T.L.O., 469 U.S. at 332 n. 2, 105 S.Ct. at 738 n. 2, the United States Supreme Court noted that at least one court, in Mora, applied the Fourth Amendment in full to in-school searches by school officials and required probable cause for such a search.
We recognize that the Louisiana Supreme Court has never specifically overruled Mora. In Ziegler, 93-3019; 637 So.2d 109, the Louisiana Supreme Court upheld the search of government employees' workstations despite the absence of individualized suspicion without addressing the possibility that the Louisiana Constitution might provide greater protection for the employees. Considering Ziegler and recent decisions of the United States Supreme Court, we conclude that Mora's requirement of probable cause and a warrant for any drug search conducted at school is no longer valid. Considering defendant's reduced expectation of privacy as a student and the principal's reasons for selecting defendant's classroom, we find the search was not unreasonable under our state constitution.
Having found no illegality in defendant being asked to remove the contents of his pockets, we next must determine the validity of the principal's action in opening the wallet. As we have indicated, the action of the dog in sniffing the wallet is not a search. Once the drug detection dog alerted on the wallet, the principal had probable cause to suspect the wallet contained drugs and was justified in searching the wallet without a warrant. Regarding defendant's book bag, because the focus of the hearing was not on the book bag, there is little evidence concerning the circumstances under which the book bag was searched. The implication from Baroni's testimony is that personal containers were not opened unless the dog alerted on them. Thus, the principal and members of the drug detection team also had probable cause to search the book bag.
When the principal asked defendant why he was carrying the money, defendant was not being questioned by a law enforcement officer and had not been taken into custody, detained, or deprived of his freedom of action, other than as appropriate considering his status as a student at school. Defendant also was not in custody or being detained when Baroni asked him how he got to school, and where his car was located. Thus, the requirements of Miranda did not apply; and the court correctly denied defendant's motion to suppress these statements. See Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); State v. Redic, 392 So.2d 451, 452-53 (La. 1980).
When the officers made the decision to search defendant's car, they already had found $400 in cash, a beeper, and a book bag decorated with drawings of marijuana leaves in defendant's possession. Large amounts of cash and beepers are indicative of drug dealing; and defendant jokingly told the principal he sold drugs. A dog trained in *340 the detection of drugs alerted on defendant's wallet and on the back of his car. When the car was searched, defendant was not in custody. Accordingly, the officers had probable cause to believe controlled dangerous substances were in the car and exigent circumstances justified an immediate search. See Senegal, 95-796 at 6; 664 So.2d at 835. Under the "automobile exception" to the warrant requirement, law enforcement officers may search a car without a warrant if they have probable cause and there are exigent circumstances which render it impractical to secure a warrant. State v. Porterfield, 524 So.2d 1363, 1366 (La.App. 1st Cir.), decree vacated on rehearing on other grounds, 541 So.2d 909 (La.App. 1st Cir.1988).
The search of the car without a warrant also was appropriate under the consent exception. Consent is valid when it is freely given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Rawls, 552 So.2d 764, 765 (La.App. 1st Cir.1989). Although the officers did not ask defendant for consent to search the car, when the dog alerted on the car defendant immediately told the officers they could search his car. Under these circumstances, defendant's consent was valid although the officers did not advise him he had the right to refuse. See State v. Carthan, 377 So.2d 308, 312 (La.1979).
In the writ application, defendant does not argue the statements he made concerning his locker or the magazine found in his locker should be suppressed for any reason other than being the fruits of the initial illegal search. As we already have indicated, the initial search of defendant's pockets was legal and provides no reason for suppressing the statements or magazine. Before defendant was questioned about his locker, he was advised of his Miranda rights and the adequacy of the explanation of his rights was not at issue at the hearing. Because the lockers are school property, defendant had no reasonable expectation of privacy; and the principal and members of the drug detection team properly searched the locker and seized the magazine.
Accordingly, the court did not err when it denied the motions to suppress.
For the foregoing reasons, the writ of certiorari previously issued herein is recalled, and the relief requested by defendant/relator is denied.
WRIT DENIED.
FITZSIMMONS, J., concurs and assigns reasons.
PITCHER, J., dissents and assigns reasons.
FITZSIMMONS, Judge, concurring.
Succinctly put, the request that students empty their pockets was not a search. Three factors combine to render the random classroom inspection less than a search: 1) a diminished expectation of privacy; 2) the school's "custodial and tutelary responsibility;" and 3) the concept today that a school should be a sanctuary from the battles on the streets. See Vernonia School District 47J v. Acton, ___ U.S. ___, ___, 115 S.Ct. 2386, 2392, 132 L.Ed.2d 564 (1995). These factors taken as a whole render the actions of the agent of the school a non-search at the point where the students were requested to empty their pockets.
A school is a special public place, given a special public trust: its supervisors and teachers stand in roles of authority derived from the parents whose children they protect, serve, and enlighten. Id. Thus, all those persons who are present at a school fall into a category whereby the general public good of the students to be served is stronger than any intrusion on an individual.
As to the reasonableness of this request that students empty their pockets, this society must adjust to the cold fact that dimly lit streets and organized crime are no longer the benchmark that delineate where violence and crime occur. A school today can no longer be perceived as safe from crime. It is all too frequently "a dimly lit street" which must be controlled and watched over in the interest of deterring substance abuse that has, sadly, become prevalent in schools. La. R.S. 17:402(A); See Vernonia School District *341 47J v. Acton, ___ U.S. at ___, 115 S.Ct. at 2395.
Moreover, even if the emptying of pockets were viewed as a search, the statute says that you can have a "random" search of the person or personal effects based on reasonable grounds. La. R.S. 17:416(A)(2)(a). The essence of "random" was evident in that all of the students in the six classes were chosen.
Once the pockets were emptied, without focusing on one individual, the reasonableness to search the defendant's car was a logical result.
PITCHER, Judge, dissents.
I respectfully dissent. When the defendant, Renen C. Barrett, was required to remove the contents from his pockets and place them on his desk, a search occurred. Neither the principal nor Sgt. Carol Baroni, who worked on the drug detection team for the St. Tammy Parish School Board, had probable cause or reasonable suspicion to conduct a search.
LSA-R.S. 17:416.3(A)(2)(a) provides as follows:
* * * * * *
(2)(a) The teacher, principal, school security guard, or administrator may search the person of a student or his personal effects when, based on the attendant circumstances at the time of the search, there are reasonable grounds to suspect that the search will reveal evidence that the student has violated the law, a school rule, or a school board policy. Such a search shall be conducted in a manner that is reasonably related to the purpose of the search and not excessively intrusive in light of the age or sex of the student and the nature of the suspected offense. (Emphasis ours).
The policy manual for the St. Tammany Parish Public Schools, known as the "Handbook on Attendance, Discipline, and Student Records," provides, in pertinent part, in the search and seizure section of the manual, as follows:
....C The teacher, principal, school security guard, or administrator may search the person of a student or his personal effects when based on the attendant circumstances at the time of the search there are reasonable grounds to suspect that the search will reveal evidence that the student has violated the law, a school rule, or a School Board policy....
As in stated in the majority opinion, the Louisiana Supreme Court held, in State v. Mora, 307 So.2d 317 (La.1975), that school officials are governmental agents and, thus, searches conducted by school officials must be consistent with the Fourth Amendment.[1] In State v. Mora, the court further held that a search on school grounds of a student's personal effects by an instructor who suspected the presence or possession of an unlawful substance was not an exception to the warrant requirement.
According to New Jersey v. T.L.O., 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), the United States Supreme Court applied the reasonable suspicion standard in determining whether a school official correctly searched a student's purse. The Court stated that the "search of a student by a teacher or other school official will be `justified at its inception' when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." New Jersey v. T.L.O., 469 U.S. at 341-42.
I believe that the principles of both State v. Mora and New Jersey v. T.L.O. are applicable to the case at hand.
In the instant case, the testimony of Sgt. Carol Baroni, the canine handler who conducted the search, indicates that she did not have any reason to suspect that the defendant possessed contraband when he was required to empty his pockets. In addition, *342 Sgt. Baroni stated that she would not have conducted the subsequent search of the defendant's vehicle had it not been for the results of the initial search, requiring the defendant to empty his pockets.
Clearly, under the above jurisprudence, LSA-R.S. 17:416.3(A)(2)(a), and the policy manual, requiring the defendant to empty his pockets was a search of his person conducted without reasonable suspicion, and therefore, a violation of LSA-R.S. 17:416.3(A)(2)(a) and the policy manual. Thus, any evidence seized during the initial search, which required defendant to empty his pockets, and any subsequent searches should be suppressed.
NOTES
[1] A teacher had found the student smoking cigarettes, but the student told the assistant vice principal she did not smoke at all. Upon examining the purse, the administrator found cigarettes and a package of cigarette rolling papers. Suspecting the purse might contain evidence of drug use, he searched further and found marijuana and evidence of drug dealing. New Jersey v. T.L.O., 469 U.S. at 328, 105 S.Ct. at 735-736.
[2] The Louisiana Constitution of 1921 was at issue in Mora; however, a concurring justice noted the same result would occur under the 1974 Constitution.
[1] The Fourth Amendment to the United States Constitution provides as follows:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.