# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-07-00426-CV

In the Matter of D. H., Appellant

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. JV23870, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

## O P I N I O N

Appellant D.H. was charged with possession of marihuana in a drug-free zone. *See* Tex. Health & Safety Code Ann. §§ 481.121, .134 (West Supp. 2009). She filed a pre-trial motion to suppress, which the trial court overruled. D.H. then pled true pursuant to a plea agreement, and the trial court adjudicated her delinquent and placed her on probation for eight months. On appeal, D.H. complains that the evidence was obtained in violation of her Fourth Amendment rights against unreasonable search and seizure. *See* U.S. Const. amend. IV (barring unreasonable searches and seizures of person or effects). We affirm the trial court's judgment.

## Factual Background

In October 2006, officers from the Austin Police Department arrived at Reagan High School to conduct a canine search of the school.[1] D.H., who was sixteen at the time, was a student

---

[1] There was conflicting testimony related to whether the school requested the search or the police asked to field test or train a drug dog. Although Assistant Principal Mike Perez testified that the arrival of the canine unit was unexpected, he also testified that the school principal had told the police that he would not object to the school being used for training purposes. Whether the canine inspection was initiated by the school or the police officers does not impact our analysis.

at the school. Assistant Principal Mike Perez led the officers through the school, allowing the dog to sniff several classrooms on each floor of each building. For every inspection, Perez entered the classroom and informed the teacher of the sweep. The students were then instructed to leave their property in the classroom and wait in the hall, and the police entered and allowed the dog to sniff the items left in the room. The students were not allowed to refuse the instructions or to take their items with them. When the officers searched D.H.'s classroom, the dog reacted to her backpack. The officers called D.H. into the classroom, read D.H. her rights, and searched her bag, where they found a small bag of marihuana.

On appeal, D.H. contends that (1) her backpack was seized for Fourth Amendment purposes when she was required to leave it behind in her classroom while she went into the hallway as instructed, and (2) because neither the school nor the officers had reason to believe she was engaged in criminal activity or in violation of school rules, they lacked reasonable suspicion to seize her bag. For those reasons, she argues that the seizure of her backpack was a violation of her constitutional rights and that the marihuana, as the fruit of an improper seizure, should have been suppressed. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961) (holding that evidence obtained by improper search or seizure is inadmissible).

**Standard of Review**

In reviewing a trial court's decision on a motion to suppress, we apply a bifurcated standard of review, giving almost total deference to the trial court's determination of the historical facts but reviewing the court's application of the law to those facts de novo. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). The trial court is the sole judge of the credibility of

witnesses and their testimony. *Id.* A defendant seeking to have evidence suppressed bears the initial burden of proving that a warrantless search or seizure occurred. *Bishop v. State*, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002). Once this burden is met, the State must then show that the search or seizure was reasonable. *Id.* Here, there is no dispute that the alleged seizure of D.H.'s backpack was done without a warrant. Therefore, the burden is on the State to show that the seizure was reasonable.

### Search and Seizure in Schools

There being little or no Fourth Amendment authority directly addressing the question of when a public-school student's property may lawfully be seized by school authorities or the police, we instead look for guidance to opinions related to student searches. Although probable cause and a warrant are generally required before law enforcement may conduct a search, *Board of Educ. of Indep. Sch. Dist. No. 92 v. Earls*, 536 U.S. 822, 828 (2002); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995), "a search unsupported by probable cause may be reasonable 'when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable."'" *Earls*, 536 U.S. at 829 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987) (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring))); *see Acton*, 515 U.S. at 653.

Although students in public schools "do not 'shed their constitutional rights . . . at the schoolhouse gate,'" their constitutional rights are not "'automatically coextensive with the rights of adults in other settings,'" and must be considered in view of the school environment. *Morse v. Frederick*, 551 U.S. 393, 396-97 (2007) (quoting *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 506 (1969); *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986);

3

*Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988)). The Fourth Amendment requires only that searches and seizures by school officials be reasonable. *T.L.O.*, 469 U.S. at 337. The public-school context requires a relaxed standard of reasonableness because insisting on "the warrant requirement 'would unduly interfere with the maintenance of the swift and informal disciplinary procedures [that are] needed,' and 'strict adherence to the requirement that searches be based on probable cause' would undercut 'the substantial need of teachers and administrators for freedom to maintain order in the schools.'" *Acton*, 515 U.S. at 653 (quoting *T.L.O.*, 469 U.S. at 340-41); *see Earls*, 536 U.S. at 828-29; *see also Safford Unified Sch. Dist. #1 v. Redding*, 129 S.Ct. 2633, 2639 (2009) (school setting requires modification of necessary level of suspicion to standard short of probable cause). In determining whether a search or seizure of a student or her property conducted was reasonable, we first consider the nature of the implicated privacy interest, then consider the character of the intrusion, and finally consider "the nature and immediacy of the government's concerns and the efficacy of the [school's action] in meeting them." *Earls*, 536 U.S. at 830, 832, 834.

**Discussion**

D.H. does not contend that the dog's inspection of her bag was a search for Fourth Amendment purposes. Instead, she argues that requiring her to leave her backpack in the classroom while she left the room was an unconstitutional seizure of her property and that she otherwise would have carried it on her person, where the dog would not have been permitted to sniff it under

4

*Horton v. Goose Creek Independent School District*, 690 F.2d 470, 479 (5th Cir. 1982).[2] We need not decide whether a seizure of D.H.'s property occurred, however, because assuming a seizure occured, *see United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (seizure occurs if there is "meaningful interference" with individual's possessory interests in property), the school's actions were reasonable and thus constitutionally permissible under the standards applied in a public-school setting.

Keeping in mind that the Supreme Court has expressly refused to impose a requirement of "individualized reasonable suspicion of wrongdoing" on schools' attempts to prevent student drug use, *Earls*, 536 U.S. at 837, we will consider the privacy interest that was impaired by the seizure of D.H.'s backpack, the nature of the intrusion on that interest, and the nature of the government's concerns and the efficacy of the seizure in addressing them. *Id.* at 830, 832, 834.

We turn first to the privacy interest that was impaired by the alleged seizure. *See id.* at 830. Students have a lessened expectation of privacy under the Fourth Amendment. *Id.*; *see Morse*, 551 U.S. at 396-97 (stating that students' constitutional rights must be considered in light of public-school setting and are not automatically coextensive with those of adults in other settings). "Securing order in the school environment sometimes requires that students be subjected to greater controls than those appropriate for adults." *Earls*, 536 U.S. at 831. We "'cannot disregard the schools' custodial and tutelary responsibility for children,'" and must view the school environment as a "backdrop for the analysis of the privacy interest at stake and the reasonableness of" the school's

---

[2] *Horton* held that allowing a dog to sniff student lockers located in a school's public hallways and automobiles parked in the school's parking lot did not constitute a search under the Fourth Amendment. *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 477 (5th Cir. 1982).

decisions. *Id.* at 830 (quoting *Acton*, 515 U.S. at 656). D.H. certainly had a legitimate privacy interest in the contents of her backpack. *See T.L.O.*, 469 U.S. at 337-38. However, considering that D.H.'s backpack was not opened, nor were its contents examined, until after the dog alerted on it, and bearing in mind the control and supervision that school authorities must properly exercise in their roles as guardians and tutors of their students, *see Earls*, 536 U.S. at 830, we hold that restricting D.H.'s ability to take her backpack with her implicated a relatively minor privacy interest.

We next consider the nature of the alleged infringement on her privacy interests. On the day in question, before the police officers and drug dog entered the classroom, Perez went in, spoke to the teacher, and asked the students to step into the hallway. The students waited outside the classroom while the canine inspection took place, and there was no risk that another student might steal anything from or rummage through D.H.'s bag. The students themselves were not sniffed and they were not in the room while the dog sniffed their belongings. Only Perez, the dog, and the two officers were present when the dog alerted on D.H.'s backpack. Thus, D.H. was not exposed to embarrassment or scrutiny by her classmates while the inspection was taking place. She was not required to open her bag in front of anyone until after the dog alerted, and then the contents of the bag were only seen by Perez and the police officers. Given the method employed in conducting the canine inspection and the minimally intrusive nature of the inspection, we hold that the invasion of D.H.'s privacy was not significant. *See id*. at 834.

Finally, we must weigh the invasion of D.H.'s rights against "the nature and immediacy of the government's concerns and the efficacy" of the seizure in meeting those concerns, keeping in mind the context in which the seizure took place. *See id*. There is an important "governmental concern in preventing drug use by schoolchildren," and the drug problem seems to

6

be worsening. *Id*. The Supreme Court has held that "deterring drug use by schoolchildren is an 'important—indeed, perhaps compelling' interest," *Morse*, 551 U.S. at 407 (quoting *Acton*, 515 U.S. at 661), and characterized it as a "nationwide drug epidemic [that] makes the war against drugs a pressing concern in every school," *Earls*, 536 U.S. at 834.

Assistant Principal Perez testified that he and the other administrators knew there was a drug problem at the school and that "students have reported and we have found that there is enough Marijuana being sold, used or kids coming back from lunch under the influence that it is something we are always on the lookout for." He said that student drug use can lead to belligerent behavior or dangerous physical reactions, saying, "It becomes a serious safety issue for us at that point and the drug question becomes secondary, because we have to deal with the student's safety first." Perez testified that the school has written policies prohibiting drug possession on school grounds: the school district's code of conduct, which states that drugs are not permitted on school property; and the campus handbook, which reiterates the district's policy and specifies that marihuana is not permitted. Students are given the handbook at the beginning of the year and are instructed to bring it to their parents, who are asked to review the handbook, sign the back page, and return the signed page to the school. Considering the low level of intrusion on D.H.'s limited privacy rights and the evidence about the drug problem at Reagan High, we hold that the seizure effectively addressed the problem of student drug use and served the important governmental interest in protecting the students' safety and health. *See id*. at 834-88.

**Conclusion**

D.H. brought her backpack into a public school, where she was required to temporarily surrender its possession and leave it in the classroom to be sniffed by a dog. Given

D.H.'s reduced expectation of privacy, the low level of intrusion involved in the dog's inspection of the airspace surrounding her backpack, the limited information gathered, Reagan High's interest in combating drug abuse, and its tutelary and custodial responsibilities for its students, we hold that the detention of her backpack was reasonable and thus constitutionally permissible. *See Jacobsen*, 466 U.S. at 125-26.[3] We overrule D.H.'s issues and affirm the trial court's judgment.

_____

David Puryear,  Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   March 5, 2010

---

[3] *See also Louisiana v. Barrett*, 683 So.2d 331, 338 (La. Ct. App. 1996) (school required students to empty pockets onto desk and leave classroom to allow drug dog to sniff belongings; "Taking into account the decreased expectation of privacy defendant had as a student, the relative unobtrusiveness of the search, and the severity of the need met by the search, we conclude the type of search conducted in this case (wherein defendant was asked to empty his pockets and leave the room) is reasonable and hence constitutional."); *Smith v. Norfolk City Sch. Bd.*, 46 Va. Cir. 238, 244-45, 261 (Va. Cir. Ct. 1998) (students were required to leave belongings in classroom to be sniffed by drug dog; "Balancing Condon's lessened privacy interests and the minimal intrusion upon them against the strong governmental concerns with drugs and guns, this Court concludes that Condon's rights were not violated by the brief seizure of his belongings.").